AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No. |
| LUIS MIGUEL PLAZA ) | 6:24-mj- 1133 |
| ) | |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 8, 2024__ in the county of __Orange__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute fentanyl |

This criminal complaint is based on these facts:

See affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

Kristofer Haws, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 9, 2024

*Judge's signature*

City and state: Orlando, FL

Robert M. Norway, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
MIDDLE DISTRCT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>LUIS MIGUEL PLAZA | Case No. 6:24-mj- 1133 |

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Special Agent Kristofer Haws of the Drug Enforcement Administration ("DEA"), being duly sworn, state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the DEA and have been since February of 2008. I am currently assigned to the Orlando District Office ("ODO"), High Intensity Drug Trafficking Areas ("HIDTA") program. In my role as a Special Agent, I have worked on domestic and international cases aimed at dismantling drug trafficking and drug trafficking-related organizations. I am an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I am knowledgeable about state and federal drug laws. I have participated in numerous drug trafficking, money laundering, and organized crime investigations. Furthermore, I have identified and investigate numerous drug trafficking organizations ("DTOs"), execute arrest and search warrants on members

of those organizations, seize and process evidence, and ultimately prosecute members of the DTO. As a Special Agent, I have also worked on numerous investigations targeting drug traffickers as well as money launderers. Based on my training and experience, I am familiar with the manner and means in which narcotics traffickers and organized crime groups conduct their business, including methods of importing and distributing narcotics, money laundering, the use of residential telephones, business telephones, cellular telephones, and other communication devices to facilitate their illegal acts.

3. I have conducted investigations concerning the identification of co-conspirators through the use of telephone records, financial records, and other pertinent documents. I have also conducted surveillance in connection with numerous narcotics investigations, through which I have learned valuable information regarding the techniques used by DTOs to distribute drugs in both domestic and international markets. As a result of my training and experience, I am familiar with the way in which DTOs illegally traffic, transport, and distribute drugs, and launder the proceeds derived from their drug distribution activity.

4. Based on my training and experience, I can attest that individuals involved in the illicit possession, distribution, manufacture, transportation, and trafficking of controlled substances, as well as the laundering of drug proceeds, often use telephones to discuss and facilitate their illegal activities. In order to conceal their identities and avoid detection from law enforcement, narcotics traffickers often enlist the aid of friends, relatives, and acquaintances to distribute or store controlled

substances or launder drug proceeds. Narcotics traffickers often use the names of these individuals or fictitious names to subscribe to telephone services, purchase property, and rent or register vehicles. Based on my training and experience, I know that drug trafficking at the retail level is largely a cash business. I know that drug traffickers often generate large amounts of unexplained wealth, and through financial transactions, attempt to conceal, disguise, or legitimize unlawful proceeds through domestic and international banks and their attendant services, securities brokers, professionals, such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses which generate large quantities of currency. In addition, drug traffickers often use drug proceeds to purchase additional narcotics to perpetuate and promote the ongoing conspiracy. I know that drug traffickers often use cellular telephones to communicate with co-conspirators in furtherance of their money laundering activities.

5. Through my employment as a law enforcement officer, I have gained knowledge in the use of various investigative techniques, including the use of wire and electronic interceptions and other types of electronic surveillance, physical surveillance, undercover investigators, confidential informants, cooperating witnesses, controlled purchases of illegal drugs, consensually-monitored recordings, investigative interviews, trash searches, mail covers, financial investigations, administrative subpoenas, and search and arrest warrants.

6. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PURPOSE OF AFFIDAVIT

7. The information set forth herein is based on the following: (a) my own personal observations; (b) information that I received from other law enforcement officers involved in this investigation, including by reviewing official reports prepared by other law enforcement officers; (c) interviews of witnesses and the review of reports summarizing the interviews of witnesses; and (d) information provided to me by law enforcement officials who met with and interviewed said witnesses.

8. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a criminal complaint, I have not set forth each and every fact that I learned as a result of this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause that a violation of federal law has been committed. Unless otherwise noted, all statements of other persons described in this affidavit are set forth in substance and in part, rather than verbatim.

9. As set forth below, there is probable cause to believe that on or about January 11, 2024, in the Middle District of Florida, Luis Miguel PLAZA, did possess with the intent to distribute fentanyl, in violation of 21 U.S.C § 841(a)(1).

4

## PROBABLE CAUSE BASIS

10. Luis Miguel PLAZA is a known fentanyl distributor operating in the central Florida area.

11. Based on the facts set forth herein, there is probable cause to believe that Luis Miguel PLAZA did possess with the intent to distribute fentanyl, in violation of 21 U.S.C § 841(a)(1).

12. The DEA is investigating a drug trafficking organization based in Orlando, Florida. Investigators believe that the head of this organization is Luis Miguel PLAZA. Through intelligence gathered from confidential sources, undercover narcotics purchases, and surveillance operations, investigators know that PLAZA is distributing xylazine and fentanyl pills in the Central Florida area. Investigators learned during the course of this investigation that PLAZA is utilizing the phone numbers (689) 237-2179 ("Telephone #1") and (407) 973-9838 ("Telephone #2") to communicate with Confidential Source 1 ("CS1") & Confidential Source 2 ("CS2") via WhatsApp to further his trafficking activities.

13. On March 29, 2023, the ODO, HIDTA Group 2 received information from CS1 that an unidentified Hispanic male had made contact via Telephone #1 with CS1; this male was subsequently identified as PLAZA. PLAZA was looking for buyers of cocaine and fentanyl in the Orlando, Florida area.

14. Based on the information provided by CS1, investigators conducted a meeting between CS1 and PLAZA on March 29, 2023. This was in an effort to fully identify PLAZA and learn where he was residing. As a result of this meeting,

investigators were able to fully identify PLAZA through his Massachusetts vehicle registration and driver's license photograph. Mobile surveillance conducted after this meeting identified that he was residing at 1915 Buchanan Bay Circle, Apartment 102, Orlando, FL.

15. On April 13, 2023, ODO, HIDTA Group 2, conducted a narcotics purchase with PLAZA in an effort to obtain a sample of fentanyl powder. A Task Force Officer ("TFO") acting in an undercover ("UC") capacity was prepared to meet with PLAZA. Investigators established surveillance at PLAZA's residence in anticipation of this meeting. Investigators observed PLAZA arrive at and enter his residence. Approximately a half hour later, investigators observed PLAZA exit his residence, enter his green Jeep Wrangler bearing Massachusetts license plate number 5NB178, and exit the apartment complex. Surveillance subsequently observed PLAZA arrive at the meet location and meet with the UC. During the meeting, PLAZA provided the UC with approximately 28 grams of suspected fentanyl powder for $780.00. A DEA laboratory analysis revealed that this white powder was in fact pure xylazine[1] powder. A photograph of the xylazine appears below:

---

[1] Xylazine, also known as "Tranq," is a powerful sedative that the U.S. Food and Drug Administration has approved for veterinary use. It is not a controlled substance under the Controlled Substance Act ("CSA") but a bill has been introduced in Congress to add it to the CSA. The DEA has warned the public of a sharp increase in the trafficking of fentanyl mixed with xylazine. The drug is reportedly used by dealers to mix with fentanyl to increase profits and sought after by users because it extends the euphoric effects of fentanyl. Xylazine presents a major health risk because unlike opioids, naloxone (Narcan) does not reverse its effects.

6



16.     On August 25, 2023, ODO, HIDTA Group 2, conducted a purchase of approximately 100 fentanyl pills from PLAZA. Investigators established surveillance at his residence in anticipation of this meeting. Investigators observed PLAZA exit his residence, enter his green Jeep Wrangler bearing Massachusetts license plate number 5NB178, and exit the apartment complex. Surveillance subsequently observed PLAZA arrive at the meet location and meet with CS1, CS2, and subsequently the same UC as the UC from the previous deal. During the meeting, PLAZA provided the UC with approximately 100 blue M30 fentanyl pills and 1 white oval pill believed to be Tramadol. Surveillance was maintained on PLAZA, and investigators observed him returning to his residence after the deal. A DEA laboratory analysis revealed that the pills did possess fentanyl and that the 1 oval pill was contained Tramadol. A photograph of the M30 fentanyl pills appears below:

7



17.     On January 5, 2024, PLAZA used Telephone #1 to advise CS2 that PLAZA had approximately 7,000 to 9,000 additional blue M30 fentanyl pills available for purchase by CS2. PLAZA sent the below picture to CS2 via WhatsApp, using Telephone #1:



18. On January 11, 2024, ODO, HIDTA Group 2, conducted a purchase of approximately 1,000 blue M30 fentanyl pills from PLAZA for $2.50 per pill. Investigators established surveillance at his residence in anticipation of this meeting. CS2 attempted to contact PLAZA at Telephone #1 but could not reach PLAZA, so CS2 contacted PLAZA at Telephone #2, advising PLAZA that CS2 was ready to meet him. Investigators observed PLAZA exit his residence, enter his green Jeep Wrangler bearing Massachusetts license plate number 5NB178, and exit the apartment complex. Mobile surveillance was maintained on PLAZA until he arrived at the meeting location. Investigators subsequently observed PLAZA arrive at the meet location and meet with CS2. During the meeting, PLAZA provided the UC with approximately 1,000 blue M30 fentanyl pills and received $2,500.00. Surveillance was maintained on PLAZA after the deal concluded, and he was observed returning to his residence. A DEA laboratory analysis revealed that the pills, weighing approximately 108 grams, did possess fentanyl. A photograph of the M30 fentanyl pills appears below:



19.     On February 8, 2024, ODO, HIDTA Group 2, prepared to conduct a purchase of approximately 7,000 blue M30 fentanyl pills from PLAZA for $2.85 per pill. Investigators established surveillance at PLAZA's residence in anticipation of this meeting. At approximately 11:42 a.m., investigators observed PLAZA's vehicle parked in front of his apartment. At approximately 1:57 p.m., investigators observed PLAZA exit the apartment for a brief moment and then re-enter. A short time later, a blue Toyota sedan bearing Florida license plate number BL23YR arrived, and an unknown Hispanic male was seen exiting the vehicle and entering PLAZA's apartment. A short time later, the two were seen leaving PLAZA's residence in the Toyota sedan. Mobile surveillance was maintained, and the two were seen entering a Dollar Tree store. Upon leaving the store, it was clear the two believed they were being followed and began to conduct countersurveillance measures by conducting U-turns and following a surveillance car. The two subsequently returned to PLAZA's

residence at approximately 2:52 p.m. The unknown Hispanic male was observed exiting the apartment and carrying a shopping bag. PLAZA was observed moments later exiting his apartment and entering his green Jeep Wrangler bearing Massachusetts license plate number 5NB178. The two both exited the apartment complex and arrived separately a short time later at the Mall at Millennial, and parked in different areas of the parking lot. The Toyota parked in the parking lot behind a Panera store, and the Jeep parked several rows southwest of the Toyota. PLAZA was observed exiting his Jeep, walking to the Toyota, and entering the passenger side of the Toyota.

20. PLAZA had provided a picture of a gift bag to CS2 earlier in the day to advise CS2 that he had the package prepared. At approximately 4:32 p.m., investigators observed the Toyota pull into the Panera parking lot and loop around the building. PLAZA was then observed exiting the Toyota and walking towards the front door of the Panera carrying a multicolored gift bag that looked like the same bag from the photograph that PLAZA sent to CS2 earlier that day. PLAZA was observed entering Panera and meeting with CS2. PLAZA provided the bag to CS2 for inspection, and it was confirmed that there were fentanyl pills inside the bag. CS2 gave the gift bag and pills back to PLAZA. A short time later, CS2 exited the Panera and surveillance was maintained on PLAZA inside.

21. A uniformed Florida Highway Patrol Officer working in conjunction with DEA was sent inside the restaurant followed by investigators. PLAZA appeared nervous and walked to the bathroom and proceeded to throw the gift bag inside the

restaurant bathroom. PLAZA was taken into custody and subsequently taken to his residence for the search warrant execution.

22. Investigators seized approximately 890 grams of blue M30 suspected fentanyl pills from inside the gift bag PLAZA carried into the Panera. A pill press, cutting agents, and wrapping materials were located in PLAZA's residence during the execution of a federal search warrant (*see* Case No. 6:24-mj-1127-RMN). Investigators also seized PLAZA's two cellular devices.

## CONCLUSION

23. Based on the foregoing facts and evidence, I believe that probable cause exists to charge Luis Miguel PLAZA with one count of possession with intent to distribute fentanyl, in violation of 21 U.S.C § 841(a)(1).

_____
Kristofer P. Haws
Special Agent
Drug Enforcement Administration

Affidavit submitted by email and attested
to me as true and accurate by telephone
conference or video conference consistent
with Fed. R. Crim. P. 4.1 and 41(d)(3)
before me this \_\_9th\_\_ day of February, 2024.

_____
ROBERT NORWAY
United States Magistrate Judge

12